**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WENIFRED E. THOMAS**<br>**a/k/a WENIFRED E. THOMPSON**<br>8209 Arbor Meadows Lane<br>Columbia, Maryland 21045,<br><br>Plaintiff,<br><br>v.<br><br>**DELIA MARIA HOME CARE AGENCY, LLC**<br>2945-47 North 5th Street<br>Philadelphia, Pennsylvania 19133;<br><br>**EVELYN DELVALLE**<br>c/o Delia Maria Home Care Agency<br>2945-47 North 5th Street<br>Philadelphia, Pennsylvania 19133;<br><br>**QUINTONIA DUNN-HICKS**<br>c/o Delia Maria Home Care Agency<br>2945-47 North 5th Street<br>Philadelphia, Pennsylvania 19133,<br><br>Defendants. | **CIVIL ACTION**<br><br>No. ____________________<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Wenifred E. Thomas a/k/a Wenifred E. Thompson, by and through her undersigned counsel, brings this Complaint against Defendants Delia Maria Home Health Care Agency, Evelyn DelValle, and **Quintonia Dunn-Hicks**, each in her individual capacity, and in support thereof alleges as follows:

## I. PRELIMINARY STATEMENT

1. Wenifred E. Thomas is a registered nurse who served as Director of Nursing of Delia Maria Home Health Care Agency ("Delia Maria"). The Director of Nursing is the clinical officer whose license and judgment stand behind a home-health agency's patient care and its

standing with regulators. Delia Maria welcomed her as "a valued asset," entrusted her with its credentialing and its expansion into New Jersey, and, by its own admission, had "no issues" with her work.

2. In November 2024, Ms. Thomas informed Delia Maria that she needed knee-replacement surgery. Delia Maria approved her leave and asked her physician to submit FMLA paperwork. Two months later, when a personal emergency and her worsening knee made the daily commute impossible, she asked to work remotely until her surgery. Delia Maria named its price in writing: "we will need you to submit your 30-day letter of resignation."

3. Ms. Thomas did not resign. In writing, she asked Delia Maria to "revisit the possibility of a longer-term remote work arrangement as a reasonable accommodation until I go on family medical leave for my surgery," and told it plainly that she was "not prepared to leave the company." Delia Maria refused to reconsider. It began speaking of "the remainder of your time with the company." Ten days after her orthopaedic surgeon certified her need for medical leave, Delia Maria declared that she had "agreed to resign." It then held her "final pay" until she surrendered her work equipment.

4. The Americans with Disabilities Act does not permit an employer to sell a disabled employee her own accommodation at the price of her job. Congress forbade precisely this type of Faustian bargain when it made it unlawful to deny employment opportunities to a qualified employee "based on the need of such covered entity to make reasonable accommodation." 42 U.S.C. § 12112(b)(5)(B). Ms. Thomas brings this action under the ADA, 42 U.S.C. § 12101 *et seq.*; the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*; and the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*, to recover what Defendants took from her.

## II. PARTIES

5. Plaintiff Wenifred E. Thomas, a/k/a Wenifred E. Thompson,[1] is an adult individual residing at 8209 Arbor Meadows Lane, Columbia, Maryland 21045. She is a registered nurse. From January 8, 2024 until Defendants ended her employment in or about February 2025, she was employed by Delia Maria as its Director of Nursing at its office at 2945-47 North 5th Street, Philadelphia, Pennsylvania.

6. Defendant Delia Maria Home Care Agency LLC is a home health care agency licensed by the Pennsylvania Department of Health, with its principal place of business at 2945-47 North 5th Street, Philadelphia, Pennsylvania 19133. Upon information and belief, Delia Maria also operates, or has operated, a practice location at 2809 River Road, Camden, New Jersey 08105.

7. Defendant Evelyn DelValle is an adult individual who, at all relevant times, was the owner and Chief Executive Officer of Delia Maria. Ms. DelValle exercised control over Delia Maria's personnel, payroll, and benefits decisions, including the decisions challenged here. She acted directly and indirectly in the interest of Delia Maria with respect to Plaintiff's employment. Ms. DelValle is sued in her individual capacity. She personally made, directed, or ratified each of the decisions challenged here, and, after the Charge was filed, she personally prepared Delia Maria's response to it, as alleged in Section V below.

8. Defendant Quintonia Dunn-Hicks is an adult individual who, at all relevant times, was Delia Maria's Human Resources and Quality Assurance Manager and, by her own description, Plaintiff's "supervisor." Ms. Dunn-Hicks is sued in her individual capacity. She personally authored Delia Maria's written demand for Plaintiff's resignation, served as Delia Maria's

[1] Ms. Thomas is in the process of resuming her maiden name, Thompson, having filed a Notice to Resume Prior Name, dated May 6, 2026 in the following divorce action: Court of Common Pleas of Delaware County, Docket No. 2025-1521.

designated contact with the EEOC for the Charge, and represented Delia Maria at the unemployment compensation hearing described in Section VI.H below.

## III. JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, because Plaintiff's claims under the ADA and the FMLA arise under federal law. It also has jurisdiction under 28 U.S.C. § 1343(a)(4), because the ADA is an Act of Congress providing for the protection of civil rights; under 42 U.S.C. § 2000e-5(f)(3), as incorporated by 42 U.S.C. § 12117(a); and under 29 U.S.C. § 2617(a)(2).

10. This Court has supplemental jurisdiction over Plaintiff's claims under the Pennsylvania Human Relations Act and the Pennsylvania Wage Payment and Collection Law under 28 U.S.C. § 1367(a). Those claims arise from the same nucleus of operative fact as the federal claims and form part of the same case or controversy.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) and 42 U.S.C. § 2000e-5(f)(3), as incorporated by 42 U.S.C. § 12117(a). Delia Maria has its principal place of business in this District. The unlawful employment practices alleged here were committed in Philadelphia County. The employment records relevant to those practices are maintained here. And Plaintiff would have continued working here but for those practices.

## IV. COVERAGE

12. Delia Maria is an "employer" and a "covered entity" within the meaning of the ADA, 42 U.S.C. §§ 12111(2) and (5)(A). It is engaged in an industry affecting commerce: it provides home health services reimbursed through Medicare, Medicaid, and Medicaid managed-care organizations, and it operates in Pennsylvania and, upon information and belief, New Jersey.

Upon information and belief, Delia Maria employed fifteen or more employees for each working day in each of twenty or more calendar weeks in 2024 and in 2025.

13. The factual basis for that belief includes the following. Delia Maria employed, among others, a Director of Nursing, a Human Resources/Quality Assurance Manager, a billing manager, office staff, registered and licensed nurses, a physical therapist, and home health aides whose service hours Delia Maria billed to managed-care organizations. Under the payroll method, each such person is counted for every week in which he or she was on Delia Maria's payroll, whether full-time or part-time. *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202 (1997).

14. Upon information and belief, Delia Maria is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A)(i), because it employed fifty or more employees for each working day during each of twenty or more calendar workweeks in 2024 and 2025. Ms. DelValle is also an "employer" under 29 U.S.C. § 2611(4)(A)(ii)(I) and 29 C.F.R. § 825.104(d), because she acted directly and indirectly in Delia Maria's interest with respect to Plaintiff's employment and controlled the decisions alleged herein. *See Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408 (3d Cir. 2012). Ms. Dunn-Hicks is likewise an "employer" under the same provisions, because she acted directly and indirectly in Delia Maria's interest with respect to Plaintiff's employment and leave, as alleged in Count V.

15. Plaintiff was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2). By the time her leave began in February 2025, she had been employed by Delia Maria for more than twelve months. She had worked a full-time schedule of Monday through Friday, 9:00 a.m. to 5:00 p.m., and therefore at least 1,250 hours during the preceding twelve months. Upon information and belief, Delia Maria employed fifty (50) or more employees within seventy-five miles of her Philadelphia worksite, a radius that includes its Camden, New Jersey location.

16. Delia Maria is an "employer" within the meaning of the PHRA, 43 P.S. § 954(b), because it employed four or more persons within the Commonwealth of Pennsylvania. Delia Maria and Ms. DelValle are "employers" within the meaning of the WPCL, 43 P.S. § 260.2a, which includes any agent or officer of a corporation or association employing persons within the Commonwealth.

## V. ADMINISTRATIVE EXHAUSTION AND TIMELINESS

17. On March 20, 2025, Plaintiff, through counsel, filed a verified charge of discrimination with the Philadelphia District Office of the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2025-04588 (the "Charge"). The Charge alleged that Delia Maria failed to provide reasonable accommodation and to engage in the interactive process; conditioned an accommodation on her resignation and attempted to coerce her into resigning; retaliated against her; subjected her to escalating hostility; withheld her wages; and constructively discharged her.

18. The Charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC"). Although the Charge was dual filed with the PHRC, the EEOC did not transfer it to the PHRC under the MOU for investigation.

19. The Charge was filed within 180 days after each of the acts complained of, as required by 43 P.S. § 959(h), and within 300 days, as required by 42 U.S.C. § 2000e-5(e)(1), as incorporated by 42 U.S.C. § 12117(a).

20. Defendants had actual notice of the Charge and of the conduct of each individual Defendant described in it. The Charge and its exhibits describe the communications of Ms. DelValle and Ms. Dunn-Hicks on which Plaintiff's claims rest. Delia Maria's written response to the Charge, dated April 2, 2025, was prepared by Ms. DelValle and addresses the conduct of both.

The EEOC identified Ms. Dunn-Hicks as Delia Maria's contact for the Charge. Each individual Defendant shares a commonality of interest with Delia Maria. _See_ _Schafer v. Bd. of Pub. Educ._, 903 F.2d 243, 251–52 (3d Cir. 1990).

21. Each individual Defendant personally directed or participated in Delia Maria's defense of the Charge. Ms. DelValle, as owner and Chief Executive Officer, prepared and submitted Delia Maria's April 2, 2025 position statement. That statement set out Delia Maria's account of Ms. Thomas's request for time off for surgery; of the request by "our HR Manager," Ms. Dunn-Hicks, that Ms. Thomas's physician submit FMLA paperwork; of the "initial agreement" that Delia Maria claimed Ms. Thomas had made; and of Delia Maria's refusal to reconsider it. Ms. Dunn-Hicks served as Delia Maria's designated contact with the EEOC for the Charge.

22. While the Charge was pending, both individual Defendants again acted for Delia Maria in defending the same separation, this time before the Pennsylvania unemployment compensation authorities. Ms. Dunn-Hicks attended the July 2, 2025 evidentiary hearing as Delia Maria's representative and, upon information and belief, testified on its behalf. Upon information and belief, Ms. DelValle, as owner and Chief Executive Officer, authorized Delia Maria's contest of Ms. Thomas's claim and supplied the information on which its defense relied. Although Ms. DelValle did not attend the evidentiary hearing of July 2, 2025, she together with Ms. Dunn-Hicks represented Delia Maria. Those proceedings are described in Section VI.H below.

23. Each individual Defendant therefore had actual knowledge, no later than April 2, 2025 and again on July 2, 2025, of the Charge, of the facts on which Plaintiff's claims rest, and of her own conduct at issue. To the extent either was not named as a respondent in the Charge, she suffered no prejudice. Each had notice of the Charge and the opportunity to present Delia Maria's position, and each did so. Neither has any interest in the conduct challenged here that is distinct

from Delia Maria's. *See* *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977); *Schafer*, 903 F.2d at 252.

24. On July 30, 2026, the EEOC issued a Determination and Notice of Rights dismissing the Charge and notifying Plaintiff of her right to sue (Exhibit A). The EEOC transmitted that Notice through its Public Portal by email notification on or about July 30, 2026.

25.

26. Although the EEOC purports to have mailed a copy of the Notice of Rights to Ms. Thomas and to her attorney on August 6, 2026, no such mailing was ever received.

27. This action is filed within ninety days after Plaintiff's receipt of the Notice of Right to Sue, as required by 42 U.S.C. § 2000e-5(f)(1), as incorporated by 42 U.S.C. § 12117(a).

28. More than one year has passed since the Charge was dual filed with the PHRC, and the PHRC has neither dismissed the complaint nor entered into a conciliation agreement to which Plaintiff is a party. Plaintiff is therefore entitled to bring her PHRA claims in this Court. 43 P.S. § 962(c)(1).

29. Plaintiff's FMLA and WPCL claims are not subject to any administrative-exhaustion requirement. They are timely under 29 U.S.C. § 2617(c) and 43 P.S. § 260.9a(g). All conditions precedent to this action have been performed or have occurred.

## VI. FACTS

### A. Ms. Thomas Becomes Delia Maria's Director of Nursing.

30. Ms. Thomas is a registered nurse with twenty-three years of experience in nursing and twenty years of experience in managerial and supervisory roles.

31. In December 2023, after interviewing with Ms. DelValle and Ms. Dunn-Hicks, Ms. Thomas accepted Delia Maria's offer to serve as its Director of Nursing. On December 20, 2023,

Delia Maria wrote to her: "Welcome to the team! We're thrilled to have you at Delia Maria Home Care Agency. We know you're going to be a valued asset to our company."

32. Ms. Thomas began work on January 8, 2024. Her position was full-time, Monday through Friday, 9:00 a.m. to 5:00 p.m., at an annual salary of $110,000. Her compensation included employer-paid medical coverage. Delia Maria has admitted that her "medical insurance premiums were 100% covered by our company."

33. The Director of Nursing position description assigns administrative, policy, quality-assurance, and clinical-oversight duties, including directing patient-care services, aggregating clinical-record reviews, and ensuring that plans of care are established and implemented. It states: "In compliance with applicable law, reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions of the position."

34. Ms. Thomas performed her duties well. In April 2024, Ms. DelValle obtained a National Provider Identifier for Ms. Thomas listing a Delia Maria practice location in Camden, New Jersey. In May 2024, Ms. DelValle listed Ms. Thomas as Delia Maria's Director of Nursing in credentialing submissions to a managed-care organization in connection with Delia Maria's New Jersey expansion. Ms. Thomas's work contributed to Delia Maria's successful regulatory surveys and accreditation.

35. Notably, Delia Maria had failed on several prior attempts to obtain accreditation before it hired Ms. Thomas.

36. Delia Maria has admitted to the EEOC that "[t]here were no issues with her workplace or her employment" before the events described below.

**B. Delia Maria Permits Remote Work — When It Suits Delia Maria.**

37. Delia Maria knew that its administrative and clinical-oversight work could be performed remotely. On October 30, 2024, Ms. DelValle informed Ms. Thomas and Ms. Dunn-Hicks: "Just fyi, I am going to work from home for a few more days. I am still experiencing debilitating lower back pain . . . ."

**C. Ms. Thomas's Knee Condition, and the Leave Delia Maria Approved.**

38. Ms. Thomas has a degenerative knee condition, osteoarthritis, that, at all relevant times, substantially limited her ability to walk, stand, climb stairs, and travel. It also substantially limited the operation of her musculoskeletal function.

39. On account of her osteoarthritis in her knees, Ms. Thomas could not walk or stand for more than 5 -15 minutes. She experienced consistent excruciating pain in general, which was exacerbated while walking, standing, sitting and driving. Ms. Thomas used crutches and a cane intermittently. In addition, her condition caused her to experience pain while sleeping, which resulted in poor and disrupted sleep patterns.

40. Her orthopaedic surgeon determined that she required a total knee replacement.

41. On or about November 8, 2024, Ms. Thomas informed Delia Maria that she was scheduled to undergo knee surgery on March 18, 2025, and would need time off to recover. By Delia Maria's own account to the EEOC, her "request for time off due to scheduled surgery was approved and our HR Manager requested that Ms. Thomas have her physician submit FMLA paperwork to our office."

42. Delia Maria did not then, or at any later time, provide Ms. Thomas with written notice of her eligibility for FMLA leave, of her rights and responsibilities under the FMLA, or of any designation of her leave as FMLA-qualifying. *See* 29 C.F.R. § 825.300(b)–(d).

43. Meanwhile, the employer-paid medical coverage that was part of Ms. Thomas's compensation ceased to function. Ms. Thomas learned at her doctor's office that her coverage was inactive. Her physician's office could not refer her for a CT scan needed to plan her surgery. Delia Maria offered shifting explanations for the lapse. On September 25, 2024, it said it was switching insurers "due to high cost and copayments." On October 30, 2024, it said its carrier "will not allow us to terminate the Medical Insurance contract until March 31, 2025." On December 2, 2024, it acknowledged that a payment "wasn't a full payment because we have not been receiving our MCO reimbursements." Later, it attributed the lapse to a carrier "system error."

**D. Ms. Thomas Requests an Accommodation, and Delia Maria Names Its Price: Her Resignation.**

44. On or about January 10, 2025, a sudden personal emergency required Ms. Thomas to relocate temporarily to Maryland.

45. Because of her knee condition, Ms. Thomas could not make a daily round-trip commute between Maryland and Philadelphia.

46. On or about January 13, 2025, Ms. Thomas met with Ms. DelValle and Ms. Dunn-Hicks and asked to work remotely until her scheduled surgery and medical leave.

47. The essential functions of the Director of Nursing position, including clinical-record review, completing and correcting plans of care (CMS Form 485), admission and discharge documentation, adjustments to home-health-aide service hours, and communication with staff, could be performed remotely, with periodic in-office presence for tasks requiring a physical signature.

48. Delia Maria did not engage with Ms. Thomas about her limitations or explore possible accommodations. Instead, on January 15, 2025, Ms. Dunn-Hicks wrote to her:

> "As we discussed on Monday, we will need you to submit your 30-day letter of resignation. As we agreed, you will be permitted to work from home over the next thirty days and we will provide you with medical coverage for 60 days. Your medical coverage will end on March 31, 2025. . . . Please submit your letter as soon as possible. Up until I receive this document you will need to utilize your PTO for any days that you have missed out of office." (Exhibit B.)

49. Delia Maria's January 15 email made a resignation letter the condition of any accommodation. It limited remote work to thirty days, so that Ms. Thomas's employment would end before her scheduled surgery and approved leave. It offered continued medical coverage, a benefit already part of her compensation, as an inducement to resign. And it required her to exhaust her paid time off until she submitted the resignation letter.

50. Ms. Thomas did not agree to resign, and she never submitted a resignation letter.

51. On January 20, 2025, Ms. Thomas wrote to Ms. DelValle and Ms. Dunn-Hicks (Exhibit C). She stated that she had "been reflecting on your suggestion that I submit my 30-day resignation letter." She continued:

> "While I understand your concerns about the potential impact of my surgery and the accommodation request, I am still deeply committed to my role and the contributions I make to the team. I feel that with the right adjustments, I could continue to be productive and support the company, even while working remotely. With this in mind, I would like to respectfully ask if we could revisit the possibility of a longer-term remote work arrangement as a reasonable accommodation until I go on family medical leave for my surgery, which is scheduled for 3-18-2025, or explore alternative solutions . . . . [I] am not prepared to leave the company."

52. Ms. Thomas's January 20 email thus (a) memorialized that Delia Maria had expressed "concerns about the potential impact of my surgery and the accommodation request"; (b) declined to submit the demanded resignation letter; (c) expressly requested a reasonable accommodation tied to her disability and her surgical leave; and (d) invited Delia Maria to propose alternatives.

53. Delia Maria refused. In its own words to the EEOC, Ms. Thomas "asked us to reconsider our initial agreement on January 20th, which we could not due to the burden and compliance issues that we incur with the Department of Health and our internal documentation processes." Delia Maria never identified any accommodation other than the one conditioned on resignation. It never asked Ms. Thomas about her medical limitations. It never claimed, before this dispute, that remote or hybrid work would impose an undue hardship.

54. Despite that refusal, Ms. Thomas continued to work under a hybrid arrangement in which she worked remotely and reported to the Philadelphia office every other week. Delia Maria's own messages confirm the arrangement. Under it, she brought outstanding plans of care current, completed admission and discharge documentation, reported changes in home-health-aide hours, communicated with staff, and delivered more than one hundred pages of completed work.

55. Delia Maria's asserted need for Ms. Thomas to supervise clinical staff in person did not reflect reality. Upon information and belief, by early 2025 Delia Maria had terminated the nurses and the physical therapist whom Ms. Thomas had supervised. Its HR manager acknowledged in February 2025 that Ms. Thomas was "still the nurse managing the files" and that Delia Maria was "hiring more nurses."

**E. After Ms. Thomas Declines to Resign, Delia Maria Turns Hostile.**

56. On February 5, 2025, Ms. Dunn-Hicks texted Ms. Thomas to come into the office "tomorrow or Friday," during a week she was not scheduled to be in the office, to sign supervisory-visit documents. Ms. Thomas noted the agreed every-other-week schedule and asked whether the documents could wait until the following Thursday. Ms. Dunn-Hicks answered that they could not wait because of an anticipated "PA health and wellness audit," and that "since you are still the

nurse managing the files it would need to be you." Ms. Thomas agreed to switch weeks and come in.

57. Ms. Dunn-Hicks then reprimanded her in a group message that included Ms. DelValle:

> "As your supervisor and the owner includee [sic] in these messages (for the remainder of your time with the company) I cannot understand your tone when, specifically, have been more the gracious to you in all of what you have going. Your still [sic] employed by the company so any reasonable requests asked of you should be accommodated with no strife."

58. Delia Maria's reference to "the remainder of your time with the company" showed that it regarded Ms. Thomas's employment as ending, even though she had declined to resign.

59. When Ms. Thomas came to the office as directed, on February 6, 2025, the documents were not ready for her. Ms. DelValle and Ms. Dunn-Hicks instead met with her, whereupon Ms. DelValle stated to Ms. Thomas, "I don't trust you." When Ms. Thomas asked why, Ms. DelValle stated because she is not sure that Ms. Thomas is actually working, a statement which made no sense in light of Ms. Thomas's calls, conversations throughout the day with the office and the amount of work Ms. Thomas completed and returned to the office.

60. Ms. Thomas was shocked by Ms. DelValle's statement claiming distrust particularly because Ms. DelValle had invited her to lunch at her home on one occasion. On a separate occasion, Ms. DelValle had called on Ms. Thomas to perform a blood pressure test on her mother at her home.

61. In addition, Delia Maria also faulted Ms. Thomas for failing to supervise "her staff," although, upon information and belief, no clinical staff then remained for her to supervise.

**F. Ms. Thomas Undergoes Surgery and Submits Her Surgeon's FMLA Certification.**

62. On or about February 15, 2025, Ms. Thomas fell, aggravating her knee condition. Consequently, she was hospitalized, and her knee surgery was performed earlier than scheduled.

63. On February 17, 2025, Ms. Thomas texted Ms. Dunn-Hicks: "I am out of surgery, unable to walk yet with PT due to weakness." That same day, Delia Maria was notified by email of the fall and the surgery and told that FMLA paperwork would follow.

64. On February 18, 2025, Delia Maria received a Certification of Health Care Provider for Employee's Serious Health Condition (Form WH-380-E) completed by Ms. Thomas's treating orthopaedic surgeon. The certification stated that she would be incapacitated, would require post-operative physical therapy, and would be unable to perform the essential functions of her position for an estimated twelve to sixteen weeks. The same communication confirmed that Ms. Thomas had completed all her assigned work and offered to return it.

65. Delia Maria did not acknowledge the certification. It did not respond to the leave request. It did not provide any eligibility, rights-and-responsibilities, or designation notice.

66. Medical leave for Ms. Thomas's surgery and recovery was a reasonable accommodation of her disability. Delia Maria had approved it in November 2024.

**G. Delia Maria Unilaterally Declares That Ms. Thomas "Agreed to Resign" and Holds Her Pay Hostage.**

67. February 28, 2025 was a regular payday. Delia Maria did not pay Ms. Thomas her wages.

68. Instead, that day Ms. DelValle wrote to Ms. Thomas (Exhibit D):

> "It is our policy to hold final pay for anyone that still has any equipment owned by Delia Maria HCA. You will receive your final pay via paper check once all equipment and patient documents are returned to our office. . . . As per our agreement, when your personal crisis prevented you from fulfilling your duties as Director of Nursing, we offered to provide medical insurance for 60 days and you agreed to resign."

69. Ms. DelValle's statement that Ms. Thomas "agreed to resign" was false. Ms. Thomas had declined in writing on January 20, 2025, and had never submitted a resignation letter.

70. By February 28, 2025, ten days after receiving her surgeon's certification and while she was recovering from surgery, Delia Maria had terminated Ms. Thomas's employment. It did so by treating her as separated, withholding her "final pay," and demanding the return of her work equipment and files. Delia Maria never issued a termination letter.

71. On March 4, 2025, after Ms. Thomas's counsel objected in writing to the withholding of her wages and to Delia Maria's coercion, discrimination, and retaliation, Ms. DelValle replied: "Final pay will be provided once all of Delia Maria HCA's property and files are returned." (Exhibit E.)

72. To obtain her wages, Ms. Thomas, then recovering from knee-replacement surgery, arranged to return Delia Maria's equipment and files. Delia Maria received them on March 7, 2025.

73. Delia Maria then mailed Ms. Thomas a cashier's check for $2,885.20. According to Delia Maria, the check included payment for 24 hours of sick leave and 16 hours of personal leave. It came without any statement of hours, rates, or deductions. The check cleared on March 12, 2025. Because the check was not a normal payroll check, Delia Maria did not provide an accounting of the wages and leave paid. Accordingly, Ms. Thomas does not know whether Delia Maria's calculation of taxes, deductions, and leave time accrued and used are accurate.

74. Delia Maria has admitted that, by March 17, 2025, its consulting physician "was not made aware that Ms. Thomas was no longer with the company."

75. Alternatively, if Ms. Thomas's employment is deemed to have ended by resignation, that resignation was a constructive discharge. Delia Maria demanded her resignation as the price of an accommodation and refused to reconsider. It subjected her to unwarranted scrutiny and hostility, spoke of the "remainder of [her] time," and declared her resigned while she recovered from surgery. It withheld her wages to compel the surrender of the tools of her job. And it left the employer-paid medical coverage she depended upon in doubt. Delia Maria knowingly permitted conditions so intolerable that any reasonable person in her position would have felt compelled to resign.

### H. Delia Maria Contests Ms. Thomas's Unemployment Compensation Claim, and Its Own Credited Testimony Confirms That It Ended Her Employment.

76. On March 2, 2025, Ms. Thomas applied to the Pennsylvania Department of Labor & Industry for unemployment compensation benefits (Claim No. 8829518).

77. On April 9, 2025, the UC Service Center denied benefits under Section 402(e) of the Pennsylvania Unemployment Compensation Law, 43 P.S. § 802(e), which disqualifies a claimant whose unemployment is due to discharge for "willful misconduct connected with [her] work." Section 402(e) governs discharges; a voluntary resignation is governed by a different provision, Section 402(b), 43 P.S. § 802(b). Upon information and belief, the Service Center's determination rested on separation information supplied by Delia Maria, which attributed Ms. Thomas's separation to misconduct, not to the resignation that Ms. DelValle had told Ms. Thomas, on February 28, 2025, she had "agreed" to.

78. Ms. Thomas timely appealed on April 11, 2025. On July 2, 2025, Unemployment Compensation Referee Robert Bates held an evidentiary hearing (Referee Office Docket No. 2025029472-RO). Ms. Thomas appeared with counsel. Delia Maria appeared and contested the appeal through Ms. Dunn-Hicks, who, upon information and belief, testified as Delia Maria's

witness concerning Ms. Thomas's request to work remotely, Delia Maria's demand for her resignation, and the end of her employment.

79. On July 3, 2025, the Referee reversed the Service Center and held Ms. Thomas eligible for benefits effective March 2, 2025 (Exhibit F). In doing so, the Referee expressly "credit[ed] the testimony of the Employer in its entirety."

80. On the strength of Delia Maria's own testimony, the Referee found that: (a) Ms. Thomas, after discussing her status with Delia Maria on January 13, 2025, requested to work remotely for six to twelve weeks; (b) Delia Maria "advised the Claimant to work remotely for the next 30 days or so, and then to resign from the employment"; (c) Ms. Thomas thereafter "informed the Employer that she did not want to resign from the employment"; (d) Delia Maria "did not permit the Claimant to continue to work for the Employer"; and (e) "[i]n order for the Claimant to receive her final paycheck, the Claimant was required to return all equipment to the Employer."

81. The Referee concluded that "the Claimant's employment ended with the Employer when the Employer was unable or unwilling to allow the Claimant to work remotely for an indeterminate amount of time, until the Claimant returned to the work area," and that "[t]he Employer ended the Claimant's employment by requiring the Claimant to return all equipment, at which time, the Employer would release the final paycheck to the Claimant." The Referee found no willful misconduct.

82. The period Ms. Thomas requested was not indeterminate. Six to twelve weeks from January 13, 2025 spanned the interval to her knee surgery, then scheduled for March 18, 2025, after which she was to begin the medical leave that Delia Maria had approved in November 2024.

83. Delia Maria's own testimony, credited in full, confirms the core of this Complaint. Delia Maria conditioned remote work on Ms. Thomas's resignation. Ms. Thomas refused to resign.

Delia Maria would not let her keep working. And Delia Maria, not Ms. Thomas, ended her employment, using her final paycheck as leverage to recover its equipment. That account cannot be reconciled with Ms. DelValle's February 28, 2025 declaration that Ms. Thomas had "agreed to resign."

84. The unemployment compensation proceeding decided a single question: whether Ms. Thomas had been discharged for willful misconduct. The Referee was not asked to decide, and did not decide, whether Ms. Thomas was disabled, whether she requested or was entitled to reasonable accommodation or FMLA leave, or why Delia Maria refused to accommodate her and ended her employment. No finding, conclusion, or order in that proceeding is conclusive or binding in this action. 43 P.S. § 829; *see Univ. of Tenn. v. Elliott*, 478 U.S. 788, 795–96 (1986) (unreviewed state administrative findings have no preclusive effect on Title VII claims); 42 U.S.C. § 12117(a). Plaintiff pleads Delia Maria's testimony, as credited by the Referee, not as a preclusive determination, but as Delia Maria's own admission of the facts alleged here. Fed. R. Evid. 801(d)(2).

**I. Delia Maria's Explanations Are Pretext.**

85. Delia Maria has offered shifting and inconsistent explanations for ending Ms. Thomas's employment: her "personal crisis"; Department of Health "compliance issues"; a need to supervise clinical staff who, upon information and belief, no longer existed; her supposed failure to respond to an equipment request that was never made, the only intervening message being "Hey Winnie!!! How are you doing?"; and a supposed "agreement" to resign that she had declined in writing.

86. Delia Maria's account shifted again before the unemployment compensation authorities. Having told Ms. Thomas on February 28, 2025 that she had "agreed to resign," Delia

Maria, upon information and belief, then reported to the UC Service Center a separation for misconduct. At the July 2, 2025 hearing, its account changed once more: it had told Ms. Thomas to work remotely for thirty days "and then to resign," she had refused, and it would not permit her to continue working. The Referee found no misconduct at all. An employer whose explanation for a termination changes with each forum invites the inference that none of its explanations is the true one.

87. Delia Maria permitted remote work when it suited Delia Maria, for its owner's back condition and, temporarily, for Ms. Thomas herself. What changed was not the work. What changed was Ms. Thomas's need for an accommodation of her disability and her impending medical leave.

88. The sequence of events confirms the causal link: approved surgical leave (November 8, 2024); accommodation request (January 13, 2025); demand for resignation (January 15); written request for accommodation and refusal to resign (January 20); "the remainder of your time with the company" (February 5–7); surgeon's certification (February 18); "final pay" and "you agreed to resign" (February 28).

89. On January 5, 2026, Delia Maria filed an appeal of the Service Center decision, which affirmed Ms. Thomas's eligibility for benefits.

**J. Ms. Thomas's Damages.**

90. As a direct and proximate result of Defendants' conduct, Ms. Thomas has lost her salary, employer-paid medical coverage, paid time off, and other benefits of employment. She has incurred out-of-pocket medical expenses, including expenses for replacement healthcare coverage and copays. She has suffered emotional distress, anxiety, humiliation, and damage to her professional reputation and career.

91. Defendants acted intentionally, with malice, or with reckless indifference to Ms. Thomas's federally protected rights. Delia Maria's own position description acknowledged its accommodation obligations, and Delia Maria itself requested her FMLA paperwork. Defendants nonetheless conditioned her accommodation on her resignation and ended her employment during her medical leave.

**COUNT I**
**Americans with Disabilities Act — Failure to Accommodate and Denial of Employment Opportunity Based on the Need to Accommodate**
**42 U.S.C. § 12112(a), (b)(5)(A), (b)(5)(B)**
*(Against Defendant Delia Maria)*

92. Plaintiff incorporates by reference every preceding paragraph of this Complaint as if fully set forth herein.

93. Delia Maria is a covered entity under 42 U.S.C. § 12111(2).

94. Ms. Thomas is an individual with a disability under 42 U.S.C. § 12102(1)(A) and (B). Her knee condition is a physical impairment that substantially limited major life activities including walking and standing, 42 U.S.C. § 12102(2)(A), and the operation of a major bodily function, her musculoskeletal function, § 12102(2)(B). She has a record of that impairment. The definition of disability "shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). The temporary nature of an impairment is not dispositive, and an impairment lasting or expected to last fewer than six months can be substantially limiting. *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214 (3d Cir. 2024); 29 C.F.R. § 1630.2(j)(1)(ix).

95. At all relevant times, including throughout January and February 2025, Ms. Thomas was a "qualified individual" under 42 U.S.C. § 12111(8). She held the Director of Nursing position and could perform its essential functions with reasonable accommodation: remote or

hybrid work until her surgery, followed by a period of medical leave for surgery and recovery. *See* *Stanley v. City of Sanford*, No. 23-997, 606 U.S. ___ (2025).

96. Delia Maria knew of Ms. Thomas's disability and her need for accommodation no later than November 8, 2024. It received further notice on January 13 and 20, 2025, and on February 17 and 18, 2025.

97. Ms. Thomas requested reasonable accommodations: (a) remote or hybrid work until her surgery, on January 13 and 20, 2025; and (b) medical leave for surgery and recovery, on November 8, 2024 and February 18, 2025.

98. Those accommodations were reasonable and available. Delia Maria had already allowed the same work to be performed remotely, by its owner and, temporarily, by Ms. Thomas. Leave for necessary medical treatment is a recognized form of reasonable accommodation. 29 C.F.R. pt. 1630, app. § 1630.2(o). An employer may be required to accommodate a disability-related limitation on an employee's ability to get to work. *Colwell v. Rite Aid Corp.*, 602 F.3d 495 (3d Cir. 2010).

99. Delia Maria failed to make a good-faith effort to assist Ms. Thomas in seeking accommodation and failed to engage in the interactive process. Its only response was an accommodation conditioned on her resignation, and it refused to reconsider when she asked for alternatives. *See* *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 1999); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751 (3d Cir. 2004); *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169 (3d Cir. 2009).

100. Delia Maria thereby failed to make reasonable accommodations to Ms. Thomas's known physical limitations, in violation of 42 U.S.C. § 12112(b)(5)(A).

101. Delia Maria also denied Ms. Thomas employment opportunities, including continued employment, the remote and hybrid arrangement, and restoration following medical leave, based on its need to make reasonable accommodation to her physical impairment, in violation of 42 U.S.C. § 12112(b)(5)(B).

102. Providing the requested accommodations would not have imposed an undue hardship on the operation of Delia Maria's business.

103. Delia Maria did not demonstrate good-faith efforts, in consultation with Ms. Thomas, to identify and make a reasonable accommodation. 42 U.S.C. § 1981a(a)(3).

104. Delia Maria acted with malice or with reckless indifference to Ms. Thomas's federally protected rights. 42 U.S.C. § 1981a(b)(1).

105. As a result, Ms. Thomas has suffered the damages described above and is entitled to the relief provided by 42 U.S.C. §§ 12117(a), 1981a, and 12205.

**COUNT II**
**Americans with Disabilities Act — Discriminatory Discharge**
**42 U.S.C. § 12112(a)**
*(Against Defendant Delia Maria)*

106. Plaintiff incorporates by reference every preceding paragraph of this Complaint as if fully set forth herein.

107. To state a claim of disability discrimination, a plaintiff must allege that she (1) is disabled within the meaning of the ADA, (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation, and (3) suffered an adverse employment decision because of her disability. *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242 (3d Cir. 2020); *Taylor*, 184 F.3d 296.

108. Ms. Thomas is disabled pursuant to 42 U.S.C. § 12102(1)(A), (B), and (C). She has an actual disability and a record of disability. Delia Maria also regarded her as having an impairment, and took the actions alleged because of it, § 12102(3)(A). Her impairment, which required total knee replacement and an estimated twelve to sixteen weeks of incapacity, was not "transitory and minor." § 12102(3)(B); _Eshleman_, 961 F.3d 242.

109. Ms. Thomas was a qualified individual at all relevant times, as alleged in Count I.

110. Delia Maria discharged Ms. Thomas on or about February 28, 2025, by declaring her resigned, withholding her "final pay," and requiring the surrender of her equipment and files.

111. In the alternative, Delia Maria constructively discharged Ms. Thomas. It knowingly permitted conditions so intolerable that a reasonable person would have felt compelled to resign. _Pa. State Police v. Suders_, 542 U.S. 129 (2004); _Green v. Brennan_, 578 U.S. 547 (2016). Those conditions included repeated demands that she resign, which the Third Circuit recognizes as a hallmark of constructive discharge. _Colwell_, 602 F.3d at 502–03 (citing _Clowes v. Allegheny Valley Hosp._, 991 F.2d 1159 (3d Cir. 1993)).

112. Delia Maria's withholding of Ms. Thomas's wages, its conditioning of her accommodation on resignation, and its exhaustion of her paid time off each also caused her "some harm" with respect to an identifiable term or condition of employment. _See_ _Muldrow v. City of St. Louis_, 601 U.S. 346 (2024).

113. Delia Maria took these actions because of Ms. Thomas's disability. Its discriminatory motive is shown by: its "concerns about the potential impact of [her] surgery and the accommodation request"; the close temporal proximity between her disability-related requests and her termination; its more favorable treatment of the owner's own remote work for a medical condition; and its shifting, pretextual explanations.

114. Delia Maria acted with malice or reckless indifference to Ms. Thomas's federally protected rights.

115. As a result, Ms. Thomas has suffered the damages described above and is entitled to the relief provided by 42 U.S.C. §§ 12117(a), 1981a, and 12205.

**COUNT III**
**Americans with Disabilities Act — Retaliation**
**42 U.S.C. § 12203(a)**
*(Against Defendant Delia Maria)*

116. Plaintiff incorporates by reference every preceding paragraph of this Complaint as if fully set forth herein.

117. The ADA prohibits discrimination against any individual because she has opposed any act or practice made unlawful by the ADA, or because she made a charge or participated in a proceeding under it. 42 U.S.C. § 12203(a). A request for reasonable accommodation is protected activity. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183 (3d Cir. 2003).

118. Ms. Thomas engaged in protected activity. She requested accommodation on November 8, 2024, January 13 and 20, 2025, and February 18, 2025. On January 20, 2025, she opposed Delia Maria's demand that she resign as a condition of accommodation. On March 3 and 4, 2025, through counsel, she objected in writing to Delia Maria's coercion, discrimination, retaliation, and withholding of her wages.

119. Delia Maria took materially adverse actions against her, actions that well might dissuade a reasonable worker from requesting accommodation or opposing discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Those actions included escalating scrutiny and reprimand; the "didn't trust her" meeting; treating her employment as ending;

terminating her employment; and continuing, after counsel's March 3–4 objection, to withhold her wages until she surrendered her equipment.

120. There is a causal connection between Ms. Thomas's protected activity and those actions. It is shown by their unusually suggestive timing and by Delia Maria's continuous pattern of antagonism. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217 (3d Cir. 2007). But for her protected activity, Delia Maria would not have taken those actions.

121. As a result, Ms. Thomas is entitled to all relief available under 42 U.S.C. §§ 12203(c), 12117(a), and 12205, including back pay, front pay or reinstatement, other equitable relief, and attorney's fees and costs.

**COUNT IV**
**Americans with Disabilities Act — Coercion, Intimidation, and Interference**
**42 U.S.C. § 12203(b)**
*(Against Defendant Delia Maria)*

122. Plaintiff incorporates by reference every preceding paragraph of this Complaint as if fully set forth herein.

123. The ADA makes it unlawful "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of" rights granted or protected by the ADA. 42 U.S.C. § 12203(b); *see also* 29 C.F.R. § 1630.12(b).

124. Delia Maria coerced, threatened, and interfered with Ms. Thomas in the exercise and enjoyment of her right to reasonable accommodation. It conditioned an accommodation on her resignation; required her to exhaust her paid time off until she submitted a resignation letter; dangled continued medical coverage as an inducement to resign; pressed her repeatedly to submit the letter; and, when she declined, declared her resigned and held her earned wages until she surrendered the tools of her job.

125. Threatening an employee with loss of her job unless she forgoes an accommodation violates § 12203(b). *See Brown v. City of Tucson*, 336 F.3d 1181 (9th Cir. 2003).

126. As a result, Ms. Thomas suffered distinct injury, including the loss of her employment and wages, and is entitled to all relief available under 42 U.S.C. §§ 12203(c), 12117(a), and 12205.

**COUNT V**
**Family and Medical Leave Act — Interference**
**29 U.S.C. § 2615(a)(1)**
*(Against Defendants Delia Maria, Evelyn DelValle, and Quintonia Dunn-Hicks)*

127. Plaintiff incorporates by reference every preceding paragraph of this Complaint as if fully set forth herein.

128. To state an FMLA interference claim, a plaintiff must allege that (1) she was an eligible employee; (2) the defendant was an employer subject to the FMLA; (3) she was entitled to FMLA leave; (4) she gave notice to the defendant of her intention to take FMLA leave; and (5) she was denied benefits to which she was entitled under the FMLA. *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014).

129. Ms. Thomas was an eligible employee, and Delia Maria, Ms. DelValle, and Ms. Dunn-Hicks were employers, as alleged in paragraphs 14 and 15.

130. Ms. Thomas was entitled to up to twelve workweeks of leave because of a serious health condition that made her unable to perform the functions of her position, 29 U.S.C. § 2612(a)(1)(D), and to restoration to her position or an equivalent position upon her return, § 2614(a)(1).

131. Ms. Thomas gave Delia Maria notice of her need for leave on November 8, 2024, and again on February 17 and 18, 2025, when she provided her surgeon's certification.

132. Defendants interfered with, restrained, and denied Ms. Thomas's exercise and attempted exercise of her FMLA rights. They (a) demanded a resignation timed to end her employment before her scheduled leave began; (b) failed to provide the eligibility, rights-and-responsibilities, and designation notices required by 29 C.F.R. § 825.300(b)–(d), leaving her uninformed of her right to job restoration, to her prejudice, *see* *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135 (3d Cir. 2004); *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002); and (c) terminated her employment during her leave, denying her the right to restoration. Terminating an employee for requesting FMLA leave may constitute interference. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500 (3d Cir. 2009).

133. Ms. DelValle personally participated in and directed these violations, including by authoring the February 28 and March 4, 2025 communications. She is individually liable as an employer. 29 U.S.C. § 2611(4)(A)(ii)(I); 29 C.F.R. § 825.104(d); *Haybarger*, 667 F.3d 408.

134. Ms. DelValle is sued in her individual capacity. She exercised supervisory authority over Ms. Thomas's employment and leave and was responsible, in whole or in part, for the violations alleged in this Count. After the Charge was filed, she defended those same decisions on Delia Maria's behalf before the EEOC and, upon information and belief, before the Pennsylvania unemployment compensation authorities, with full knowledge of Ms. Thomas's surgery and of her surgeon's certification.

135. Ms. Dunn-Hicks is sued in her individual capacity and is individually liable as an employer. 29 U.S.C. § 2611(4)(A)(ii)(I); 29 C.F.R. § 825.104(d); *Haybarger*, 667 F.3d 408. As Delia Maria's Human Resources Manager and, by her own description, Ms. Thomas's "supervisor," she exercised supervisory authority over Ms. Thomas's employment and leave, and she was responsible, in whole or in part, for the violations alleged in this Count. She administered Ms.

Thomas's request for surgical leave, including by requesting her FMLA paperwork in November 2024, yet never issued the eligibility, rights-and-responsibilities, or designation notices that the FMLA requires. She directed Ms. Thomas's work and her in-office schedule. She authored the January 15, 2025 demand for a 30-day resignation that would have ended Ms. Thomas's employment before her scheduled leave began, and she required Ms. Thomas to exhaust her paid time off until she submitted it. She received notice of Ms. Thomas's surgery on February 17, 2025, and, upon information and belief, received her surgeon's certification as Delia Maria's Human Resources Manager and took no action on it.

136. Defendants' violations were willful.

137. As a result, Ms. Thomas is entitled to lost wages, salary, employment benefits, and other compensation, with interest; an equal additional amount as liquidated damages; equitable relief, including reinstatement or front pay; and reasonable attorney's fees, expert fees, and costs. 29 U.S.C. § 2617(a)(1), (3).

**COUNT VI**
**Family and Medical Leave Act — Retaliation**
**29 U.S.C. § 2615(a)(1)–(2); 29 C.F.R. § 825.220(c)**
*(Against Defendants Delia Maria, Evelyn DelValle, and Quintonia Dunn-Hicks)*

138. Plaintiff incorporates by reference every preceding paragraph of this Complaint as if fully set forth herein.

139. To state an FMLA retaliation claim, a plaintiff must allege that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012).

140. Ms. Thomas invoked her right to FMLA-qualifying leave on November 8, 2024 and on February 17 and 18, 2025. *Id.* at 303.

141. Defendants terminated her employment on or about February 28, 2025, ten days after receiving her surgeon's certification.

142. Ms. DelValle and Ms. Dunn-Hicks are each individually liable under this Count as employers, for the reasons alleged in Count V. Each personally participated in the course of conduct that ended Ms. Thomas's employment, beginning with the January 15, 2025 demand that she resign before her FMLA leave began and ending with Delia Maria's declaration, ten days after it received her surgeon's certification, that she had resigned.

143. Her invocation of FMLA rights was a determinative factor, or alternatively a motivating factor, in Defendants' decision. This is shown by the unusually suggestive timing, by Defendants' attempt to secure her resignation before her scheduled leave, and by Defendants' pretextual explanations. *Erdman*, 582 F.3d 500; *see Egan v. Del. River Port Auth.*, 851 F.3d 263 (3d Cir. 2017).

144. Defendants' violations were willful.

145. As a result, Ms. Thomas is entitled to the relief provided by 29 U.S.C. § 2617(a)(1) and (3).

**COUNT VII**
**Pennsylvania Human Relations Act — Disability Discrimination and Failure to Accommodate**
**43 P.S. § 955(a)**
*(Against Defendant Delia Maria)*

146. Plaintiff incorporates by reference every preceding paragraph of this Complaint as if fully set forth herein.

147. The PHRA prohibits an employer from discharging, or otherwise discriminating against, an individual because of a non-job-related handicap or disability, including by failing to provide reasonable accommodation. 43 P.S. § 955(a). Federal courts interpret the PHRA "in harmony with the ADA." *Morgan*, 114 F.4th 214.

148. For the reasons alleged in Counts I and II, Delia Maria discriminated against Ms. Thomas because of her disability. It failed to accommodate her, denied her employment opportunities because of her need for accommodation, and discharged her, actually or constructively, in violation of 43 P.S. § 955(a).

149. As a result, Ms. Thomas is entitled to all relief available under 43 P.S. § 962(c), including back pay, front pay or reinstatement, compensatory damages for emotional distress and humiliation, and attorney's fees and costs under 43 P.S. § 962(c.2).

**COUNT VIII**
**Pennsylvania Human Relations Act — Retaliation**
**43 P.S. § 955(d)**
*(Against Defendant Delia Maria)*

150. Plaintiff incorporates by reference every preceding paragraph of this Complaint as if fully set forth herein.

151. The PHRA makes it unlawful for an employer to discriminate against an individual because she has opposed any practice forbidden by the PHRA. 43 P.S. § 955(d).

152. For the reasons alleged in Count III, Delia Maria retaliated against Ms. Thomas for requesting accommodation and for opposing its unlawful demand that she resign, in violation of 43 P.S. § 955(d).

153. As a result, Ms. Thomas is entitled to all relief available under 43 P.S. § 962(c) and (c.2).

**COUNT IX**
**Pennsylvania Human Relations Act — Aiding and Abetting**
**43 P.S. § 955(e)**
*(Against Defendants Evelyn DelValle and Quintonia Dunn-Hicks)*

154. Plaintiff incorporates by reference every preceding paragraph of this Complaint as if fully set forth herein.

155. The PHRA makes it unlawful for "any person, employer, . . . or employe, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." 43 P.S. § 955(e). A supervisor may be individually liable under § 955(e). *Dici v. Pennsylvania*, 91 F.3d 542 (3d Cir. 1996).

156. Ms. DelValle aided, abetted, incited, compelled, and coerced Delia Maria's unlawful discriminatory practices. As owner, she refused to reconsider the accommodation, declared Ms. Thomas resigned, and conditioned her wages on the surrender of her equipment.

157. Ms. Dunn-Hicks aided, abetted, incited, compelled, and coerced Delia Maria's unlawful discriminatory practices. She authored the January 15, 2025 demand for Ms. Thomas's resignation and the February 2025 messages referring to "the remainder of your time with the company," and she participated in the "didn't trust her" meeting.

158. Ms. DelValle and Ms. Dunn-Hicks are each sued in her individual capacity. Each personally participated in the discriminatory and retaliatory conduct alleged. And each, after the Charge was filed, personally defended that conduct on Delia Maria's behalf: Ms. DelValle in Delia Maria's April 2, 2025 position statement, and Ms. Dunn-Hicks as Delia Maria's designated EEOC contact and as its representative at the July 2, 2025 unemployment compensation hearing. Each therefore had actual notice of, and a full opportunity to answer, the claims asserted against her here.

159. As a result, Ms. Thomas is entitled to all relief available under 43 P.S. § 962(c) and (c.2) against each individual Defendant.

**COUNT X**
**Pennsylvania Wage Payment and Collection Law**
**43 P.S. §§ 260.3, 260.5, 260.9a, 260.10**
*(Against Defendants Delia Maria and Evelyn DelValle)*

160. Plaintiff incorporates by reference every preceding paragraph of this Complaint as if fully set forth herein.

161. Delia Maria agreed to pay Ms. Thomas an annual salary and to provide accrued paid time off as part of her compensation.

162. The WPCL requires an employer to pay all wages due to its employees on regular paydays designated in advance, 43 P.S. § 260.3(a). It requires that an employee separated from the payroll be paid her wages no later than the next regular payday, § 260.5(a).

163. Delia Maria failed to pay Ms. Thomas the wages due on the regular payday of February 28, 2025. It conditioned their payment on the return of its equipment and files, a condition the WPCL does not authorize.

164. Upon information and belief, Delia Maria has failed to pay Ms. Thomas all wages and accrued leave owed to her, in an amount to be proven at trial. Those amounts have remained unpaid for more than thirty days beyond the regularly scheduled payday, and no good-faith contest or dispute justifies the nonpayment.

165. Ms. DelValle, as an agent and officer of Delia Maria, personally decided to withhold Ms. Thomas's wages, and is an "employer" liable under 43 P.S. § 260.2a.

166. As a result, Ms. Thomas is entitled to her unpaid wages; liquidated damages of twenty-five percent of the wages due or five hundred dollars, whichever is greater, 43 P.S. § 260.10; and reasonable attorney's fees and costs, 43 P.S. § 260.9a(f).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Wenifred E. Thomas respectfully requests that this Court enter judgment in her favor and against Defendants, and award the following relief:

A. A declaration that Defendants' conduct violated the ADA, the FMLA, the PHRA, and the WPCL;

B. Reinstatement to her position or, in lieu of reinstatement, front pay;

C. Back pay, including lost salary, benefits, and paid time off, with prejudgment interest;

D. Compensatory damages for emotional distress, humiliation, reputational harm, and out-of-pocket losses, including medical expenses;

E. Punitive damages under 42 U.S.C. § 1981a(b)(1) on Counts I and II;

F. Liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii) on Counts V and VI;

G. Unpaid wages and liquidated damages under 43 P.S. § 260.10 on Count X;

H. An additional award to offset any adverse tax consequences of a lump-sum award of back or front pay, *see Eshelman v. Agere Sys., Inc.*, 554 F.3d 426 (3d Cir. 2009);

I. Injunctive relief requiring Delia Maria to adopt and implement lawful reasonable-accommodation and FMLA policies and to train its managers in them;

J. Reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 12205, 29 U.S.C. § 2617(a)(3), 43 P.S. § 962(c.2), and 43 P.S. § 260.9a(f);

K. Pre- and post-judgment interest; and

L. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Docusign Envelope ID: 34321A4D-2658-8DCF-83F2-77B489B08DB6

**LOCAL RULE 53.2 CERTIFICATION**

Pursuant to Local Civil Rule 53.2, undersigned counsel certifies that, to the best of counsel's knowledge and belief, the damages recoverable in this civil action exceed the sum of $150,000, exclusive of interest and costs. Counsel further certifies that this action is not subject to compulsory arbitration because jurisdiction rests in part on 28 U.S.C. § 1343.

Date: October 26, 2026

Respectfully submitted,

Andrew R. Benedict, Esq.
PA Attorney I.D. No. 87939
BBC Law Firm, LLP
2005 Market Street
19th Floor, Suite 1940
Philadelphia, Pennsylvania. 19103
Tel: (215) 253-3790
Member of the Bar of this Court

Miouly E. Pongnon, Esq.
(*pro hac vice* motion to be filed)
Law Office of Miouly E. Pongnon
2005 Fifth Avenue, Suite 1
New York, New York 10035-1804
Tel.: (212) 722-8141
MioulyPongnon@PongnonLawOffice.com

*Attorneys for Plaintiff Wenifred E. Thomas*

## INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | EEOC Determination and Notice of Rights, Charge No. 530-2025-04588 (issued July 30, 2026) |
| B | Email from Q. Dunn-Hicks to W. Thomas (January 15, 2025) |
| C | Email from W. Thomas to E. DelValle and Q. Dunn-Hicks (January 20, 2025) |
| D | Email from E. DelValle to W. Thomas (February 28, 2025) |
| E | Email from E. DelValle to P. Lundy (March 4, 2025) |
| F | Decision of Unemployment Compensation Referee, Pa. Dep't of Labor & Industry, Referee Office Docket No. 2025029472-RO (July 3, 2025) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WENIFRED E. THOMAS**<br>**a/k/a WENIFRED E. THOMPSON**<br>8209 Arbor Meadows Lane<br>Columbia, Maryland 21045,<br><br>Plaintiff,<br><br>v.<br><br>**DELIA MARIA HOME CARE AGENCY, LLC**<br>2945-47 North 5th Street<br>Philadelphia, Pennsylvania 19133;<br><br>**EVELYN DELVALLE**<br>c/o Delia Maria Home Care Agency<br>2945-47 North 5th Street<br>Philadelphia, Pennsylvania 19133; and<br><br>**QUINTONIA DUNN-HICKS**<br>c/o Delia Maria Home Care Agency<br>2945-47 North 5th Street<br>Philadelphia, Pennsylvania 19133,<br><br>Defendants. | **CIVIL ACTION**<br><br>No. ____________________<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## VERIFICATION

I, Wenifred E. Thomas, a/k/a Wenifred E. Thompson, declare as follows:

1. I am the Plaintiff in this action. I have read the foregoing Complaint and Demand for Jury Trial, and I know its contents.

2. The facts alleged in the Complaint are true and correct of my own personal knowledge, except as to those matters alleged upon information and belief, and as to those matters, I believe them to be true.

3. The legal citations, legal characterizations, and legal conclusions in the Complaint are those of my counsel.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on October 23, 2026, at Columbia, Maryland.

DocuSigned by:
Wenifred Thomas
E87BF8069AAA4DF...

Wenifred E. Thomas
a/k/a Wenifred E. Thompson
Plaintiff